LOUISA B. DRAKE v. JOHN WILD, EXR., ET AL.

Windsor County, 1893.

Before:   Taft, Munson, Start and Thompson, JJ.

*Trusts. Statute of limitations. Jurisdiction. Comming-
ling of trust funds. Staleness.*

1.  In case of an express trust the statute of limitations does not
    begin to run against the *cestui que trust*, until the trustee
    has repudiated the trust and claims the estate adversely
    and such repudiation and adverse claim has been brought
    to the knowledge of the *cestui que trust*, after the latter
    is *sui juris* and the connection so wholly at an end as to
    indicate that the *cestui que trust* is no longer susceptible to
    that influence which the trustee may have acquired in virtue
    of the trust relation.

2.  In case of an express trust equity will grant relief in favor of
    the heir of the *cestui que trust* against the executor and
    legatees of the trustee, especially if an injunction is asked
    for to prevent the diminution of the trust estate by the pay-
    ment of legacies.

3.  If a trustee, under an express trust, commingles trust funds
    with his own, his entire estate, as against himself or those
    claiming under him, is thereby charged with the payment
    of the trust fund, and the burden is cast upon him or his
    representative of showing what part of the estate is not
    trust property.

4.  Under our equity practice the defence of staleness cannot be
    interposed by demurrer.

Bill in equity.   Heard upon the demurrer of the defend-
ant to the bill for want of equity, at the December term,

1892.  TYLER, chancellor, *pro forma,* dismissed the bill. The orator appeals.

The bill in substance alleged that Cyrus B. Drake and Louisa Smith, the father and mother of the oratrix, were married in 1839 and that the oratrix was their only child and heir; that in 1867 the father of her mother deceased, leaving a considerable estate, of which she inherited the sum of $4,550; that her father, the said Cyrus B. Drake, took said $4,550 into his hands immediately thereafterwards and held the same in trust for his wife, the mother of the oratrix, together with the income and increase thereof, and that he never accounted for the same nor any part of the same during his lifetime; that the mother of the oratrix died November 6, 1870, intestate, and that no letters of administration were granted upon her estate; that her father, Cyrus B. Drake, survived her mother and continued to hold said trust fund, principal and income, until the 21st day of April, 1878, when he too deceased; that at his death he left a large estate intermingled with and as a part of which was the trust fund hereinbefore mentioned, and that said trust property still remained a part of his estate; that Cyrus B. Drake left a will by which he bequeathed a certain specified sum to the oratrix, and certain specific legacies to Middlebury College and certain other charitable institutions, to be paid when the amount of his estate should become sufficient for that purpose; that the defendant, John Wild, was appointed the executor of said will, and had continued to act as such from the decease of Cyrus B. Drake until the present time; that all the debts against said estate had been fully satisfied and that there were no liabilities against said estate except the legacies payable to Middlebury College and the other benevolent societies, and the trust fund belonging to the mother of the oratrix.

The bill prayed that the executor might be directed to pay over to the oratrix the trust fund, and that an injunction might be granted to restrain him from paying the aforesaid

legacies until the amount of such fund was established and paid.

*Stewart & Wilds* for the defendant.

The oratrix has a complete remedy at law by the prosecution of her. claim against the estate of her father. *Riley* v. *McInlear's Estate*, 61 Vt. 254; *Lynde* v. *Davenport*, 57 Vt. 597; *Underhill* v. *Morgan*, 33 Conn. 105.

The statute of limitations may be interposed by demurrer, and is in this case a complete defense. Story Eq. Pl. ss. 484, 503: *Tharp* v. *Tharp*, 15 Vt. 105; *Lynde* v. *Davenport*, 57 Vt. 597.

The demand is stale and this objection may be taken by demurrer. Story Eq. Pl. s. 485; *Landsdale* v. *Smith*, 106 U. S. 391; *Speidel* v. *Henrici*, 120 U. S. 387; 2 Story Eq. Jur., s. 520; *King et al.* v. *White & Hammond*, 63 Vt. 158.

*D. C. Denison & Son* for the oratrix.

The statute of limitations does not run upon an express trust. *Chamberlain* v. *Estey*, 55 Vt. 378; *Wade* v. *Pulsifer*, 54 Vt. 45; Perry Tr., ss. 141, 467.

The court of equity having jurisdiction to enjoin the executor from paying these legacies, will retain that jurisdiction until the whole matter is disposed of. *Dana* v. *Nelson, et al.*, 1 Aik. 252.

The opinion of the court was delivered by

THOMPSON, J.   The defendant, Middlebury College, demurred to the bill for want of equity. The demurrer for the purpose of determining this question admits such facts as are regularly pleaded in the bill. *Hall* v. *Dana*, 2 Aik. 381.

I.   It is contended that the statute of limitations is a bar to this action. Does the bill present a case in which a court

of equity in analogy to law will apply the statute bar? Louisa Smith Drake, the mother of the oratrix, took and held to her sole and separate use the money and securities which she received by inheritance and distribution from the estate of her father, Frederick Smith, deceased. St. 1867, No. 21; R. L. s. 2,322. The bill charges that after she received this property, her husband, Cyrus B. Drake, took and held the same in trust for her, together with the income and increase thereof. Considering the fact that they then held the relation of husband and wife to each other, we think the bill charges an express or direct trust. As between the trustee and *cestui que trust*, in the case of an express or direct trust, the statute of limitations has no application unless the trustee has repudiated the trust and claims the trust estate adversely, and such repudiation and adverse claim have been brought to the knowledge of the *cestui que trust*, after the latter is *sui juris*, and the connection is so wholly at an end as to indicate that the *cestui que trust* is no longer controlled by the influence proceeding from the trustee, which existed during the continuance of the trust. *Evarts* v. *Nason*, 11 Vt. 122; *Wade* v. *Pulsifer*, 54 Vt. 45; Per. Tr. (1st Ed.) s. 863; Ang. Lim. (6th Ed.)s. 166; 2 Pom. Eq. Juris. s. 1,080; *Jones* v. *McDermott*, 114 Mass. 400; *Davis* v. *Coburn*, 128 Mass. 377; *Seymour* v. *Freer*, 8 Wall. 202; *Goodrich, Admr.*, v. *Pendleton*, 3 John. Ch. 384; *Allen's Admr.*, v. *Wooley's Exrs.*, 1 Green Ch. (N. J.) 209; *Miles* v. *Thorne*, 38 Cal. 335, (99 Am. Dec. 389 and note). There is nothing in the bill which shows a repudiation of the trust or an adverse holding of the trust estate by Cyrus B. Drake under any claim of right. The fact that he made the will he did has no bearing upon this point, for by it he does not attempt to dispose of the trust estate, but only of his own estate. The oratrix is the sole issue of his marriage with Louisa Smith Drake, and the sole heir of her mother. At the decease of his wife, he thereafter held the property

which he had received from his wife, under the same trust, for his daughter, the oratrix, and after his death his executors took it charged with the trust. Per. Tr. (1st Ed.) s. 344. The statute of limitations cannot avail the defendant, as the case is presented by the bill.

II. It is also urged that the oratrix has mistaken her remedy; that it is to be had, if at all, at law and not in equity. When the trust was created, it was of such kind that equity alone had exclusive and original jurisdiction of it. Neither of the parties could proceed at law against the other in respect to it. In this case the aid of the court of chancery has also been invoked by way of injunction to prevent the payment of certain legacies to the detriment of the trust estate. In *Wade* v. *Pulsifer*, *supra*, the same question of jurisdiction was raised, and in disposing of it this court said: " It is said that the orators have an adequate remedy at law, and that chancery, therefore, has no jurisdiction of the suit. The court acquired a rightful jurisdiction to enjoin the distribution of the guardian's estate, and the removal of the assets beyond the jurisdiction of our courts. This, by the settled practice of the court, would be a sufficient ground upon which to retain the suit and accord proper relief. It may be that *some* remedy would be open to these orators at law, but it is not apparent that any such remedy would be adequate to meet the exigencies of the case. But the jurisdiction of equity over the trust relations subsisting between guardians and wards and other persons standing in fiduciary relations, to give relief against breaches of trust, is one of the most ancient, best settled and most salutary instances of the exercise of chancery power known to the system of equity jurisprudence." *Davis* v. *Coburn*, 128 Mass. 377, 382. It is suggested that the allegation in the bill that Cyrus B. Drake had intermingled the trust estate with his own, brings an element into this case which makes the doctrine enunciated in *Wade* v. *Pulsifer* inapplicable, but in that

case there had also been a commingling of the trust estate with that of the trustee by him in his lifetime. Again, this is not a controversy between the oratrix and the creditors of the trustee over the question of marshaling the assets of the estate of Cyrus B. Drake, but between her and his executor and legatees, who can have no better nor different rights in the premises than he would have were he alive and defending this suit. When a trustee, without the consent of the *cestui que trust*, mingles trust money or property which he holds under an express or direct trust with his own, so that it cannot be distinguished, the right and lien of the beneficiary attaches to the entire combined fund as security for all that actually belongs to the trust estate, and the burden rests upon the trustee of showing most conclusively what portion is his; and whatever of the mixed fund, including profits and principal, he cannot show to be his own, even though it be the whole mass, will be awarded to the beneficiary. 2 Pom. Eq. Juris. s. 1,076. Under an express or direct trust, equity will not permit a trustee to take advantage of his own wrong of this kind to defeat its jurisdiction, nor to impair the rights of the *cestui que trust*. This court has jurisdiction of this case.

III. The defendant also insists that, independent of the statute of limitations, the claim of the oratrix is stale, and for that reason it ought not to be entertained by a court of equity. This is a defence recognized in equity, and is not dependent for its application by the court upon any rule which it may have adopted in analogy to the statute of limitations. What constitutes a stale equity is a vexed question hardly susceptible of an accurate definition. Length of time alone is not a test of staleness. The question must be determined by the facts and circumstances of each case, and according to right and justice. The relations of the parties to each other often throw great light upon the question. A delay between parties occupying the relation to each other

of parent and child, or husband and wife, or the like, might not give rise to staleness, when the same delay between parties not occupying such relations to each other might present such a case as to justify the application of the doctrine. *King* v. *White & Hammond*, 63 Vt. 158. It has been doubted whether the defence of staleness can be invoked in a case to enforce a trust against an express trustee. 1 Pom. Eq. Juris. s. 418. But it is not necessary for us to decide whether it can be invoked in such a case. In the United States courts and in some other jurisdictions, this defence may be interposed by demurrer. *Landsdale* v. *Smith*, 106 U. S. 391. But such is not the practice in this State. When a defendant relies upon the lapse of time, or a presumption arising therefrom, but not upon the absolute bar of the statute of limitations, he must plead or answer the facts. He cannot protect himself by demurrer. *Payne* v. *Hathaway*, 3 Vt. 212; *Kimball* v. *Ives*, 17 Vt. 430; *Deloraine* v. *Browne*, 3 Brown Ch. 633 and same 1st Am. Ed. p. 528, note 7; Per. Tr. s. 869; Mitf. & Ty. Eq. Pl. 306; 1 Dan. Ch. Pr. (Perkin's Ed.) 587.

*The pro forma decree of the court of chancery is reversed and cause remanded, with mandate to overrule the demurrer of defendant, Middlebury College, with leave to withdraw its demurrer and to answer over, and to proceed with the case.*